IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-665-BO

| | |
|---|---|
| RAY ANTHONY POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 27 & 30]. A hearing on this matter was held in Elizabeth City, North Carolina on November 22, 2013 at 2:00 p.m. For the reasons discussed below, this matter is REMANDED for further consideration by the Commissioner.

## BACKGROUND

On January 22, 2009, plaintiff filed an application for social security disability benefits alleging an onset date of February 19, 2008. The claim was denied initially and upon reconsideration. On July 27, 2010, plaintiff appeared and testified before an Administrative Law Judge ("ALJ"). On August 6, 2010 the ALJ an unfavorable decision. The plaintiff appealed to the Appeals Council. On August 14, 2012 the Appeals Council denied the claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner. The plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

Mr. Powell suffers from multiple medical conditions, including but not limited to: (1) chronic pain due to left brachial plexopathy with weakness and atrophy; (2) chronic pain due to compartment syndrome/medial brachial compartment syndrome; (3) three cervical disc herniations at C4-5, C5-6, and C6-7, with compression of the spinal cord; (4) multiple mononeuropathies of femoral, radial, ulnar, and medial nerves, with pain and compression diagnosed as median neuropathy/anterior interosseous nerve syndrome; (5) obstructive sleep apnea and fatigue; (6) nerve damage to the left hand; (7) chronic neck and back pain; (8) hypothyroidism; (9) high cholesterol; and (10) fixed apical defect of heart with possible prior infarct and sinus tachycardia. [Tr. 28–68, 986–89].

On the morning of February 19, 2008, plaintiff was injured in a severe automobile collision when his 10-wheeler truck rolled and he was trapped inside with his left arm extended and pinned down. [Tr. 197–226, 37]. Plaintiff was airlifted to the hospital where a radiology examination established that he had sufferd: (1) a left nasal bone fracture; (2) underlying soft tissue lacerations; (3) a fracture involving the medial wall of the maxillary sinus/posterior ethmoid with air cells on the left; and (4) multiple left sided rib fractures. [Tr. 520–22]. Multiple small foci of mediastinal air anterior to the heart and two left lobe pulmonary nodules were also diagnosed. *Id.*

On February 26, 2008, Mr. Powell returned to the hospital for follow up and was treated by Dr. Courtney Sommer. [Tr. 336–38]. At that time, plaintiff presented with complaints of left hand radiculopathy and was unable to grasp or grip things effectively. *Id.* Dr. Sommer reported that plaintiff did have radiculopathy present on examination, plaintiff experience diminished sensation over the ulnar side of his hand and was unable to oppose his finger and thumb. *Id.*

At an April 23, 2008 follow-up, plaintiff experienced arm and hand numbness. [Tr. 334–35]. Dr. Scott Hultman reported that Mr. Powell could not perform flexion of the index finger and had only a flicker of thumb flexion at the PIP joint. *Id.* On May 6, 2008, plaintiff was treated at Raleigh Orthopedic Clinic by Dr. Robert Wyker. Dr. Wyker diagnosed a left cervical radiculopathy. [Tr. 647–54]. Plaintiff experienced numbness and tingling in his upper left extremity, was unable to make a fist, and Dr. Wyker reported decreased strength in the left side with grip testing. *Id.* An x-ray of the left shoulder established AC joint arthritis and an x-ray of the cervical spine established decrease in the lordosis. *Id.* An MRI established C4-5, C5-6, and C6-7 disc protusion with central stenosis. *Id.*

On June 3, 2008, Mr. Powel underwent another MRI which established central C4-5 herniation with moderate compression of the spinal cord, left eccentric disc herniation C5-6 with moderate flattening of the left side of the spinal cord and C6 foraminal narrowing, and right eccentric disc herniation C6-7 with impression on the spinal cord. [Tr. 507]. Plaintiff continues to experience medical difficulties as a result of his collision through the present date.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

3

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, the ALJ erred at step four in the process. The ALJ determined that Mr. Powell has a RFC of Medium with the ability to lift and carry up to 25 pounds frequently and 50 pounds occasionally, to stand and walk for up to six hours in an eight hour work day, and to sit for up to six hours in an eight hour workday, with limitations including: being limited to lifting 10 pounds with the left upper extremity, being limited to performing unskilled, simple, routine, repetitive tasks, and being precluded from working around heights, moving machinery, and driving a motor

4

vehicle. This Court finds that the ALJ's RFC determination is not supported by substantial evidence.

The ALJ's decision recites a subset of plaintiff's medical history before adopting in whole a state agency physical residual functional capacity assessment. [Tr. 22–25]. That RFC was drafted by a non-treating and non-examining SSA employee – not a treating physician with hands-on clinical experience in examining plaintiff. The substantial evidence does not support this RFC given plaintiff's acute cervical condition and shoulder injury. The ALJ failed to properly consider plaintiff's treating physician's review and did not take it into account when making his RFC determination. The ALJ also erred by failing to consider the ruling in plaintiff's worker's compensation proceeding.

The substantial evidence in the record makes it quite apparent that plaintiff's abilities do not rise to the level deserving of a RFC of medium work. This Court is not sure what plaintiff's RFC should be, but remands to the Commissioner to make a proper determination of plaintiff's RFC. When reconsidering plaintiff's RFC, the Commissioner should take care to provide good reason for the weight given to plaintiff's treating physicians' opinions and to discuss how such opinions impact the RFC finding.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the matter is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED.
This ∂ꝩ day of November, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE